YOUNG v. WEAVER.

(Division A.   October 6, 1947.)

[32 So. (2d) 202.   No. 36504.]

James A. Finley, of Tupelo, for appellant.

Adams & Long, of Tupelo, for appellee.

**Roberds, J.,** delivered the opinion of the court.

For some six years prior to the trial of this case in the lower court Young and his wife had occupied, as tenants of Weaver, the west apartment of a two apartment building owned by Weaver in Tupelo, Mississippi. Weaver and his wife, during that time, occupied the east apartment as their residence.

Weaver, becoming dissatisfied with the situation, on August 20th, 1946, made written application to the Area Rent Control Office of Price Administration at Columbus, Mississippi, for permission to institute proceedings to evict the Youngs from the premises, the reasons stated in the letter for such eviction being "unsatisfactory tenant." A copy of the petition Weaver proposed to file was enclosed in the letter but it is not in the record. However, the ground for eviction stated in the petition must have been that of nuisance, because the Area Office, in a written reply to Weaver's letter, stated "it appears to me that this is a nuisance case," and gave permission to Weaver to proceed to legal eviction on that ground under Section 6(a) (3) of the Federal Rent Regulation for Housing.

On September 13, 1946, Weaver wrote Young, giving him notice to vacate, saying:

"The reason for this notice to vacate is due to the fact that I desire to do some interior decorating and on previous occasions you have failed to permit me or my wife, Mrs. M. G. Weaver to enter your part of the duplex.

"My further reason for asking you to vacate is that this duplex is the only home that I own and inasmuch as the personal relations between our immediate families have become somewhat strained to the point whereby it

is not enjoyable or pleasant for either family to be so closely situated.''

He sent a copy of this notice to the Area Rent Control Office. Young replied to this letter, denying he had refused permission to Weaver to enter his apartment, and inviting him to ''make periodic inspection at any reasonable hour any day of any week.'' Young refused to vacate the premises. In October thereafter Weaver instituted proceedings in a justice of the peace court for eviction of the Youngs under Section 946, Code 1942, ''and kindred statutes,'' the ground for the eviction, as stated in this pleading, being Young's refusal to vacate in accordance with Weaver's notice to him of September 13th.

The judgment of the justice of the peace court was in favor of Young. Weaver appealed to the circuit court. There, by agreement of the parties, the case was heard and decided by the circuit judge, trial by jury being waived. The trial judge awarded judgment to Weaver, including double rent against Young from September 30, 1946, the date for vacation by Young set out in the letter of September 13th to the date of the judgment. From that judgment Young appeals here.

The learned trial judge seemed to adopt the view that the ground of this proceeding was the time expiration of a month to month tenancy after due notice to vacate under Section 946, Miss. Code 1942, and related statutes; that whether or not a nuisance under said section 6(a) (3) had come about at the rented premises as a result of the alleged conduct of the Youngs was not in the case. In this we think the able trial judge was in error. All of the written reports of Weaver to the Area Rent Control Office undertook to set out a state of facts showing a nuisance. No report was based simply upon expiration of the term after notice to quit. The Examiner-Inspector of the Rent Control Office understood the ground to be that of a nuisance and gave permission to the landlord to proceed against the tenant on that ground. The notice

of the landlord to the tenant to vacate undertook to set out facts showing that ground, and, while the landlord's pleading did mention refusal of the tenant to vacate after expiration of the term, it also complained that he had failed to vacate in accordance with the notice given him, which notice was not based upon expiration of the lease in time but upon its termination by acts of the tenant. In addition, the entire case was tried upon the theory of a nuisance and all of the evidence was directed to that question. When Weaver was asked his reason for attempting to evict Young he replied "nuisance." There was no issue as to the length of the tenancy in the beginning or as to whether subsequently the time period might have been changed. We, therefore, consider the case as one of nuisance, and the question at once arises whether or not the plaintiff made out such a case by his proof, accepting as true, as the trial judge had the right to do, all of the evidence reasonably tending to establish the status of a nuisance upon the leased premises.

Mr. Weaver testified. He was asked, "And on what ground do you base nuisance?" He replied, "Because our families cannot get along." And in reply to another question he said, "Yes, I asked Mr. Young if he and his wife would apologize to my wife for the misunderstanding between them, that we might get along, but he never did." He said that during the five days the OPA controls were off he asked Young to pay more rent and he agreed to do it but did not. That was all the testimony bearing upon the question given by Weaver when first placed upon the stand. He was recalled by Young and was asked if at the trial in the justice of the peace court "did not introduce proof to the effect that Mr. Young and Mrs. Young had refused you access to the property for the purpose of inspection? A. Correct." That was all of Weaver's testimony on this question. He placed no other witness on the stand. However, some of the evidence offered by Young bears upon the question. He said that he was paying forty dollars rent per month and that

on August 3rd Weaver asked for sixty dollars per month and he agreed that "if this is the law at the end of this period—" he would pay sixty dollars; that he had never refused Weaver or his wife permission to enter his apartment to make an inspection; that one morning about 8:15 a man knocked at the apartment door, said he was a carpenter sent by Mrs. Weaver and he wanted to "hand some lumber up through a closet to work upstairs"; that he told him he could not come in at that moment because Mrs. Young was then cleaning the closet, and was not suitably dressed for the man to come into the apartment, and he told the workmen to come later. Mrs. Young testified that on this occasion "Mrs. Weaver called and asked me to clean out my closet that she wanted to put steps in—" and she told Mrs. Weaver she would be glad to do that; that the carpenter appeared within about five minutes and she could not admit him then because she had not finished cleaning the closet and had not gotten suitably dressed; that later in the day the carpenter returned and constructed the steps in the closet. She was corroborated in this by a lady friend who was present. Mrs. Young also testified, when asked about the relation which existed between the two families, that they had always been on very friendly terms, until the past summer, when "Mrs. Weaver approached me in the back yard and told me that she would like to get the apartment, and I says 'what's wrong, have I done something?' And she said 'Oh, just little things,' and I said, 'I would like for you to tell me,' for I was so surprised she asked for the apartment." No one disputed the foregoing testimony of Mr. and Mrs. Young, for, as stated, Weaver was the only witness in his behalf and we have given his testimony relating to the question under consideration. Does this testimony establish a nuisance under the Federal Rent Control Act, 50 U. S. C. A. Appendix, Section 901 et seq.?

Section 6(a) of that Act provides that no tenant shall be removed if he is paying the rent to which the landlord

is entitled unless he is guilty of certain specified acts or conduct, one of which being that he "is committing or permitting a nuisance" on the premises. It is not necessary for us to undertake a specific definition of "nuisance" as used in this statute. We will discuss that meaning sufficiently, however, to demonstrate, we think, that the foregoing proof does not show that Young was committing a nuisance.

It is the province of the local court to define the term. Administrative Interpretation Under Section 6(a) (3) (ii); Di Lella v. O'Brein, 187 Misc. 922, 68 N. Y. S. (2d) 374. However, the interpretation by the Administrator is entitled to great weight and consideration. Bowles v. Wheeler, 9 Cir., 152 F. (2d) 34; Bowles v. Seminole Rock & Sand Co., 325 U. S. 410, 65 S. Ct. 1215, 89 L. Ed. 1700; White v. Bowles, Em. App., 150 F. (2d) 408; Hyde v. Fornara, 74 Ga. App. 438, 40 S. E. (2d) 151. The Administrator has construed the term to mean a legal nuisance. He has further said that a certificate to the landlord to proceed to eviction "will not be issued simply because other occupants of building complain of the conduct of the tenant concerned. Consideration will be given to the fact that, in a structure housing a number of people, the normal use of the premises by one occupant may interfere to some extent with the comfortable enjoyment of the premises by another. It must appear, therefore, that the tenant's conduct is such as persons of normal sensibilities should not be expected to endure." "Questions have arisen concerning the eviction of a tenant who over a period of time has conducted himself in a manner which is objectionable to other persons living in the same building. Where under all the circumstances the tenant's conduct is wholly unreasonable, and interferes substantially with the comfortable enjoyment by other persons, of normal sensibilities, of premises which they occupy in the same building, it is not the purpose of Section 6 of the rent regulations to protect the possession of the tenant." Administration Interpretion, supra. 46 C.

J., page 645, sums up the legal definition of a nuisance in these words: "In legal phraseology, the term 'nuisance' is applied to that class of wrongs that arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, or from his improper, indecent, or unlawful personal conduct, working an obstruction or injury to a right of another, or of the public, and producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage."

In Di Lella v. O'Brein, supra [68 N. Y. S. (2d) 377], dealing with an eviction instituted under Section 6(a) (3) and particularly involving conduct of a tenant claimed to be a nuisance, the court announced that tenants are bound to a rule of reasonable conduct, taking into consideration the housing accommodations, the environment, the neighborhood, the size of the family, and the ordinary conduct of people living under the conditions in question. The application of this rule requires recognition of the acute housing shortage but it also demands that the tenant conduct himself as a reasonable person over a period of time, having regard to the comfortable enjoyment of the premises by others. Isolated instances of misconduct will not suffice but a continued or frequent violation of this rule will be sufficient. It requires the landlord to prove that the tenant is not conducting himself within the above rule.

Again one act of disorderly conduct on the part of tenants, even though there is a conviction therefor, is not sufficient to constitute a nuisance. Metzger v. Hecht, 187 Misc. 399, 66 N. Y. S. (2d) 47.

We do not find that this court has undertaken to formulate a definition of a nuisance which would be applicable under the issues and circumstances of this case. However, Section 1071, Miss. Code 1942, Chapter 2, under the title "Nuisances," has some bearing upon the question. It reads: "If a tenant or occupant of a building or tenement under a lawful title uses such place

as a nuisance as herein defined, such use shall annul and make void the lease or other title under which he holds and, without any act of the owner, shall cause the right of possession to revert and vest in him, and he may without process of law make immediate entry upon the premises." Two classes of acts are described in that chapter as constituting a nuisance: One is a place where lewdness, assignation, or prostitution is conducted or permitted (Section 1060), and the other where gambling is permitted or aided (Section 1073). We do not say a nuisance might not exist under other conditions nor do we undertake to define precisely the circumstances under which a nuisance might exist under the federal statute under consideration. At most, under the facts of the case at bar, the Youngs refused a carpenter admission to their apartment early in the morning, and later admitted him, and some unfriendly relations had developed between the two families. Young, in reply to the notice to vacate, expressly "invited" Weaver ". . . to make periodic inspection at any reasonable hour any day of any week." This combination of circumstances could not constitute a nuisance under any recognized definition of the term.

Reversed and judgment here for appellant.