COCHRAN *v.* CONSUMERS' WIREBOUND BOX COMPANY

No. 42573          February 11, 1963          149 So. 2d 844

*Young, Upshaw & Gily, Louie Bishop,* Waynesboro, for appellant.

*W. Vol Jones, Sr. & Jr.,* Waynesboro, for appellee.

ETHRIDGE, J.

This is a suit for damages for powdered sawdust, soot, and other substances allegedly coming from an industrial incinerator and blowing on plaintiff's home and business. Rayvon Cochran (appellant) brought the action in the Circuit Court of Wayne County against appellee, Consumers' Wirebound Box Company. The jury returned a verdict for defendant. We hold that Cochran was entitled to a peremptory instruction on

liability of the defendant, and remand the case for a hearing on damages.

The Company is an industry in the City of Waynesboro, manufacturing veneer, boxes, and related items. It is situated on the east side of a railroad which runs north and south. Around 1956 it constructed an incinerator on the west side of the railroad, for the purpose of burning all of the pulverized, dry waste from the sizing. The incinerator is in the shape of a large jug, about 30 feet in diameter at the base, and 24 feet at the top, across which is a heavy screen with wire mesh about one-quarter inch in size. The incinerator on the west side of the railroad is connected to the plant on the east by a large duct 24 inches in diameter, and about 350 feet in length, crossing over the railroad. The dry waste is carried from the plant to the incinerator by a fan, which blows it through the duct. The dry waste is dropped into the bottom of the incinerator where it is burned, assisted by a fan to keep the flame ignited.

Cochran lives on the west side of the railroad several hundred yards west of the incinerator. He also owns two rental houses situated on either side of his residence, and a filling station and grocery store in the immediate vicinity.

For several years prior to January, 1962, when the incinerator was operated by defendant, burned sawdust, soot, and other substances emanated at frequent intervals from it and fell upon the area in which Cochran's property was located, covering his houses and business with the fine-powdered soot and burned sawdust. These substances blew through windows and screens in his home, on his tables and furniture, and in his store and filling station. It got on clothes hung out to dry, and blew on his food and the vegetables in his garden. It was difficult to wash cars at the filling station, since

the powdered stuff would fall upon them afterwards, which would necessitate repeating the job.

(Hn 1) In brief, the uncontradicted evidence reflects that for several years prior to January, 1962, the substances which came from defendant's incinerator produced considerable annoyance, inconvenience, harassment, and discomfort for plaintiff and his family, in their home, their property, and in their place of business. Defendant's evidence did not contradict this fact. Its witnesses said the Company had constructed an efficient, modern type of incinerator, but its president and plant superintendent both averred that the Company had to dispose of the dry waste in some way. Cochran protested about it in the Spring of 1961, the Company checked it, but concluded there was nothing it could do. One witness for defendant said she was not bothered by any substances from the incinerator, but she lived north of it, had not been on plaintiff's street, and did not know where he lived. Since at least January, 1962, the Company had not been using its incinerator, at least to any appreciable extent, because it obtained a market for its dry waste with a plywood mill.

Accordingly, under the undisputed evidence, Cochran was entitled to his requested peremptory instruction at the conclusion of all the testimony. The evidence showed that these substances, coming from defendant's incinerator, covered Cochran's premises and produced considerable annoyance, inconvenience, and discomfort. Plaintiff was entitled at least to nominal damages.

(Hn 2) A reasonable use of one's property does not include those uses which produce obnoxious odors or atmospheric pollution in which the atmosphere is contaminated to such an extent as substantially to impair the comfort of and enjoyment by neighbors of their property. Laurel Equipment Co. v. Matthews, 218 Miss. 718, 67 So. 2d 258 (1953); Cooper Tire & Rubber Co.

v. Johnston, 234 Miss. 432, 106 So. 2d 889 (1958).; Alfred Jacobshagen Co. v. Dockery, 243 Miss. 511, 139 So. 2d 632 (1962).

In short, Cochran was entitled to his requested peremptory instruction on liability. The judgment of the circuit court is reversed, and judgment is rendered here for appellant on the question of liability. As to damages, the cause is remanded for a new hearing on that issue. See Cooper Tire & Rubber Co. v. Johnson, *supra.*

Reversed and judgment rendered for appellant on liability; on issue of damages, remanded.

*Lee, P. J., and Kyle, Arrington, and Rodgers, JJ.,* concur.