# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01492-COA

WILLIAM BLACKWELL                                                          APPELLANT

v.

WILLIAM LUCAS                                                               APPELLEE

DATE OF JUDGMENT:              09/21/2017
TRIAL JUDGE:                   HON. DALE HARKEY
COURT FROM WHICH APPEALED:     JACKSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        EDWARD D. MARKLE
ATTORNEY FOR APPELLEE:         EARL L. DENHAM
NATURE OF THE CASE:            CIVIL - TORTS - OTHER THAN PERSONAL
                               INJURY AND PROPERTY DAMAGE
DISPOSITION:                   AFFIRMED - 11/20/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     William Lucas and his wife planted some "plants and shrubs" in the front yard of their home in Ocean Springs. Their neighbors, the Blackwells, complained and then filed suit in circuit court, seeking damages and injunctive relief. The "plants and shrubs" are not alleged to be noxious. Nor do they encroach on the Blackwells' property. However, the Blackwells allege that the plants and shrubs obstruct their view across the Lucases' property to the ocean beyond. The circuit court dismissed the Blackwells' complaint for failure to state a claim upon which relief can be granted. We affirm.

## ALLEGATIONS[1] AND PROCEDURAL HISTORY

¶2.    The Lucases own and reside in a house on Front Beach Drive in Ocean Springs. In March 2016, William Blackwell and his wife[2] bought the lot next to the Lucases' home on the same street. On June 9, 2017, the Blackwells sued the Lucases in Jackson County Circuit Court, alleging as follows:

> On or about March 26, 2017, the Blackwells' [sic] noticed that Mr. & Mrs. Lucas had intentionally planted shrubs along the northwest side of their property contiguous with the southeast side of the Blackwell's [sic] property line. The shrubs and plants appeared to have been recently planted. If allowed to grow, the plants and shrubs would block the Blackwells' view of the ocean, the sunsets and the beautiful areas normally and typically available to property owners in the Oak Bluff Subdivision.

> Shortly thereafter, the Blackwells asked Mr. & Mrs. Lucas to remove the plants and shrubs or to retard their growth so that the Blackwells' view of the ocean and surrounding area would not be blocked. The Lucas' [sic] declined to do so.

> The plants and shrubs planted by Mr. & Mrs. Lucas along the common property line have and/or will unreasonably block the view of the Blackwells.

> The actions of Mr. & Mrs. Lucas have created a nuisance by blocking the Blackwells' view of the ocean and surrounding area and by using their property in a manner that unreasonably annoys, inconveniences and/or harms the Blackwells.

> The actions of Mr. & Mrs. Lucas amounts [sic] to and/or equates [sic] to an invasion of the Blackwells' interest in the use and enjoyment of their land and the invasion is intentional and unreasonable or negligent.

> The shrubs and plants installed by Mr. & Mrs. Lucas have no beneficial

---

[1] On a motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure, we take "the well-pleaded factual allegations of the complaint as true." *State v. Quitman Cty.*, 807 So. 2d 401, 406 (¶16) (Miss. 2001).

[2] The pleadings do not provide a first name for either Mrs. Blackwell or Mrs. Lucas.

use and were installed and maintained by them for the purpose of annoying the Blackwells and preventing them from enjoying their property.

¶3. The Blackwells allege that the plants and shrubs have caused them "mental pain and suffering." Their complaint sought damages and preliminary and permanent injunctive relief "requiring the removal of the plants and shrubs or to restrict their growth and height so the Blackwells' view of the ocean and surrounding area is not blocked."

¶4. The Lucases responded with a motion to dismiss for failure to state a claim upon which relief could be granted. *See* M.R.C.P. 12(b)(6). They argued that the complaint failed to allege a violation of any legally cognizable right. The circuit court granted the Lucases' motion and dismissed the case. The Blackwells appealed.

## ANALYSIS

¶5. "A motion to dismiss under M.R.C.P. 12(b)(6) raises an issue of law, which is reviewed de novo." *Quitman Cty.*, 807 So. 2d at 406 (¶16). Such a motion "tests the legal sufficiency of a complaint, and an inquiry as to the legal sufficiency is essentially limited to the content of the complaint." *State v. Bayer Corp.*, 32 So. 3d 496, 502 (¶21) (Miss. 2010) (quotation marks omitted).[3] "Taking the well-pleaded factual allegations of the complaint

---

[3] The Blackwells complain that the circuit court's order granting the Lucases' motion to dismiss relied in part on factual representations made by the Lucases in their motion or during argument on the motion. The circuit court erred to the extent that it considered facts outside the complaint; however, our standard of review is de novo, and our review is limited to the content of the complaint. *See Stroud v. Progressive Gulf Ins. Co.*, 239 So. 3d 516, 526 (¶31) (Miss. Ct. App. 2017) ("We review the record de novo without deference to the circuit court's reasoning or conclusions. Accordingly, this Court's decision on appeal does not turn on or require approval or disapproval of the precise reasoning that the circuit court gave for its ruling."). Thus, the circuit court's discussion of additional facts is of no moment.

as true, the motion should not be granted unless it appears beyond any reasonable doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Quitman Cty.*, 807 So. 2d at 406 (¶16). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Penn Nat'l Gaming Inc. v. Ratliff*, 954 So. 2d 427, 431 (¶6) (Miss. 2007), *superseded by statute on other grounds*.

¶6. The material factual allegations of the Blackwells' complaint are set out above in paragraph two. The Blackwells do not allege that the Lucases' "plants and shrubs" are noxious. Nor do they allege that the plants or shrubs have encroached on their property.[4] Indeed, the Blackwells do not even tell us what type of plants or shrubs are at issue. Their only allegation of harm is that,"[i]f allowed to grow," these plants and shrubs will one day obstruct their view across the Lucases' property. The Blackwells argue that this gives them a viable cause of action for a "spite fence" or a nuisance. We cannot agree.

¶7. To begin with, the complaint's basic premise is flawed. The Blackwells do not have any common law or statutory right to an unobstructed view across their neighbors' property. The Blackwells cite no Mississippi precedent recognizing such a right. Moreover, in *Gulf House Association Inc. v. Town of Gulf Shores*, 484 So. 2d 1061 (Ala. 1985), the Alabama Supreme Court held that residents of a beachside condominium had "no legal entitlement to a view across [their neighbor's] property" or to "a view of the Gulf of Mexico." *Id.* at 1064.

---

[4] The Blackwells have a right to cut and remove any part of a plant or shrub that grows on or overhangs their property. *See Rogers v. Ford*, 57 So. 3d 681, 683 (¶¶7-9) (Miss. Ct. App. 2011).

4

That court reasoned that a landowner does not "acquire such a right to the use of his window, as to deprive [his neighbor] of the right to build on his lot, in any manner his judgment, or fancy may dictate." *Id.* (quoting *Ray v. Lynes*, 10 Ala. 63 (1846)). Thus, the condominium residents, by complaining that construction on their neighbor's property would obstruct their view, "failed to show any legally cognizable adverse effect on the use, enjoyment, and value of their property." *Id.* We reach the same basic conclusion here. The Blackwells have no legally cognizable right to a view across the Lucases' property. Nor do they have a right to dictate the type or placement of the Lucases' shrubs. In the absence of such a right, their complaint necessarily fails to state a claim upon which relief can be granted.[5]

¶8. In support of their claim, the Blackwells rely in part on the only reported Mississippi case about a "spite fence," *Green Acres Trust v. Wells*, 72 So. 3d 1123 (Miss. Ct. App. 2011). *Green Acres Trust* was decided by an evenly divided Court, so it has no precedential value.[6] In that case, a chancery court ordered the removal of a fourteen-foot-high "spite fence." *Id.*

---

[5] *See, e.g.*, *Mitchell v. Atlas Roofing Mfg. Co.*, 246 Miss. 280, 297, 149 So. 2d 298, 305 (1963) ("A cause of action arises out of an antecedent primary legal right with which the law invests a person and for the infringement of which it gives him a remedy. The right to maintain an action depends upon the existence of a cause of action which involves a combination of a right on the part of the plaintiff and the violation of such right by the defendant. The existence of a legal right is, accordingly, an essential element of the cause of action, inasmuch as a plaintiff must recover on the strength of his own case instead of on the weakness of the defendant's case, since it is his right, instead of the defendant's wrongdoing, that is the basis of recovery. That right or duty means a legal right or duty, and not a mere moral obligation which is enforceable neither in law or in equity.").

[6] "[A] majority of all sitting judges is required to create precedent . . . ." *Buffington v. State*, 824 So. 2d 576, 580 (¶15) (Miss. 2002).

5

at 1125-26 (¶9).[7] The chancery court relied on a treatise that defined a "spite fence" as "a structure of no beneficial use to the erecting owner or occupant of the premises, but erected or maintained by him solely for the purpose of annoying the owner or occupier of adjoining property." *Id.* (quoting 9 *Powell on Real Property* § 62.05 (Wolf ed., 2000)). The chancery court's order was affirmed by an evenly divided Court. *Id.* at 1126 (¶12). However, as the dissent observed, "there is no Mississippi authority concerning spite fences," and the "claim or cause of action . . . has no authority or precedent under Mississippi jurisprudence." *Id.* at 1127 (¶¶17-18) (Griffis, J., dissenting). Because *Green Acres Trust* was a 5-5 decision, there is still no precedent for such a claim under Mississippi law. Moreover, we decline to recognize a new cause of action for a "spite fence" in a case that does not even involve a fence. Again, this case involves only some unspecified "plants and shrubs" that, "[i]f allowed to grow," allegedly may obstruct the Blackwells' view.[8]

¶9.     Citing three cases from other states, the dissent thinks it is "conceivable" that the Lucases' shrubs might be a "fence." *Post* at n.10. However, each of the cited cases held that trees could fit within the definition of a spite fence or "structure" under those states' respective *spite fence statutes*. *Wilson v. Handley*, 119 Cal. Rprt. 2d 263, 265, 268-69 (Cal.

---

[7] The fence at issue was made of wire mesh with green slats running through it. *Green Acres Trust*, 72 So. 3d at 1125 (¶6). Although five families lived around the defendants' property, the defendants only built the fence along their border with the plaintiffs' property. The defendants "left a small opening in the fence allowing the [plaintiffs] a view of [a] septic tank." *Id.* at 1126 (¶10).

[8] For this reason, we also reject the Blackwells' argument that the plants and shrubs violate a municipal ordinance and, therefore, constitute a "nuisance per se." By its plain terms, the ordinance only restricts the height of "solid fence or wall." It does not apply to plants or shrubs.

6

Ct. App. 2002) (evergreen trees); *Dowdell v. Bloomquist*, 847 A.2d 827, 829-31 (R.I. 2004) ("towering" forty-foot western arborvitae trees); *MJD Props. LLC v. Haley*, 358 P.3d 476, 478, 482 (Wash. Ct. App. 2015) (eighteen-foot cedar tree). Many states apparently have such statutes, some of which date to the nineteenth century.[9]  But the Mississippi Legislature has never enacted such a law or recognized such a cause of action.  We decline to do so as a matter of common law—particularly in a case that involves only some "plants and shrubs" rather than an actual fence or even a tree.  *See Barbour v. State ex rel. Hood*, 974 So. 2d 232, 244 n.19 (Miss. 2008) ("Our constitutional duty . . . is to apply the law, and leave matters of public policy to the other branches.").

¶10.    Nor does the Blackwells' complaint state a cause of action for a "nuisance."  "An entity is subject to liability for a private nuisance only when its conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land . . . ."  *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 14 (¶19) (Miss. 2007).  In *Biglane*, the extreme noise from a saloon was deemed a nuisance based on a neighbor's testimony that she was forced to sleep away from her apartment on the weekends, when there was live music and the saloon kept its doors and windows open.  *Id.* at 14-15 (¶¶20-28).  The Supreme Court affirmed the chancery court's order requiring the saloon to keep its doors and windows closed.  *Id.* at 15 (¶28).  As another example, in *Alfred Jacobshagen Co. v. Dockery*, 243 Miss. 511, 515-16, 139 So. 2d 632, 633 (1962), the "foul, obnoxious, offensive and sickening odors" emanating

---

[9] Some of these statutes apply only to fences that "unnecessarily exceed" a specific height.  *See* Cal. Civ. Code § 841.4 (ten feet); R.I. Gen. Laws § 34-10-20 (six feet).  The Blackwells' complaint fails to allege the height of the plants and shrubs at issue here.

7

from a rendering plant were deemed a nuisance. The court found that the odors were "almost impossible of description" and ordered the plant to take steps to prevent them. *Id.*

¶11. In this case, the Blackwells do not allege that they have been driven from their property or that the Lucases' plants or shrubs prevent them from using their property. There is no allegation that the shrubs are noxious or have any impact on the living conditions on the Blackwells' property. Put simply, there has been no actual or threatened "invasion" of *the Blackwells'* property. *Biglane*, 949 So. 2d at 14 (¶19). Rather, the Blackwells only complain that, "[i]f allowed to grow," the shrubs may one day obstruct their view across *the Lucases'* property. However, as discussed above, the law does not vest the Blackwells with a right to an unobstructed view across their neighbors' property.

¶12. In short, the Blackwells' complaint fails to plead any *facts* that would support a viable claim for a private nuisance. The complaint contains only conclusory assertions that the Lucases' shrubbery is a "nuisance" that "unreasonably annoys, inconveniences and/or harms [them]" or "amounts to and/or equates to an invasion of [their] interest in the use and enjoyment of their land." Our Supreme Court has held that such "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Ratliff*, 954 So. 2d at 431 (¶6).

¶13. Finally, the Blackwells' complaint fails to state a claim for the additional reason that it fails to allege that the "plants and shrubs" have *actually* obstructed their view. The complaint only asserts that, "[i]f allowed to grow," the shrubbery will obstruct their view at some unspecified point in the future. But sometimes plants die. Other times they do not

8

grow very tall. A complaint must be based on something more than speculation that a neighbor's shrubs might one day grow tall enough to annoy. If for no other reason, the Blackwells' complaint was properly dismissed for failure to allege any present injury or "an imminent threat of irreparable harm for which there is no adequate remedy at law." *A-1 Pallet Co. v. City of Jackson*, 40 So. 3d 563, 569 (¶20) (Miss. 2010) (holding that such a showing is required to obtain a preliminary or permanent injunction) (quoting *Ruff v. Estate of Ruff*, 989 So. 2d 366, 369-70 (¶13) (Miss. 2008)).

¶14. The Blackwells' complaint fails to state any claim upon which relief can be granted. Accordingly, the judgment of the circuit court is **AFFIRMED**.

**BARNES, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. TINDELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., IRVING AND GRIFFIS, P.JJ., AND WESTBROOKS, J.**

**TINDELL, J., DISSENTING:**

¶15. At a minimum, the Blackwells were required to disclose, in general terms, what the Lucases did wrong and when and where the alleged wrong took place. *Ill. Cent. R.R. Co. v. Adams*, 922 So. 2d 787, 790 (¶8) (Miss. 2006). The majority correctly states that the Blackwells have no legal right to an unobstructed view across their neighbors' property. However, the Blackwells' claims, as pled, take issue with the Lucases' alleged spiteful intent and the nuisance created by the placement of the plants and shrubs, not that they are entitled to an unobstructed view. Insomuch as the Blackwells have sought a claim for a spite fence and a private nuisance, it is my opinion that the complaint was sufficiently pled.[10] In

---

[10] While Mississippi has never addressed this issue, other states have determined that, depending on the type of plants and the manner in which they are planted, trees, shrubs, and

addition, our appellate courts have repeatedly found it is error for a circuit court to consider matters outside the pleadings without converting the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *State v. Bayer Corp.*, 32 So. 3d 496, 503 (¶24) (Miss. 2010); *see also Jourdan River Estates LLC v. Favre*, 212 So. 3d 800, 803 (¶5) (Miss. 2015); *Wilbourn v. Equitable Life Assurance Soc'y*, 998 So. 2d 430, 435 (¶13) (Miss. 2008). It is apparent from the record that the circuit court, in granting the motion to dismiss, considered factual findings outside the complaint without converting the motion into one for summary judgment. For these reasons I would reverse and remand this case for further proceedings.

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., AND WESTBROOKS, J., JOIN THIS OPINION.**

---

plants may constitute a structure for purposes of a spite fence. *See Wilson v. Handley*, 119 Cal. Rptr. 2d 263, 269 (Cal. Ct. App. 2002) (concluding that a row of trees planted on or near the boundary line between adjoining parcels of land can be a spite fence); *Dowdell v. Bloomquist*, 847 A.2d 827, 831 (R.I. 2004) (affirming a court's determination that, based upon the relative positioning of trees on the defendant's land, the trees' towering presence could be considered a spite fence); *MJD Props. LLC v. Haley*, 358 P.3d 476, 482 (Wash. Ct. App. 2015) (concluding that a single tree artificially located and planted with spiteful intent might constitute a structure). Like those states, I believe it is conceivable that the shrubs installed by the Lucases could, for all practical purposes, constitute a spite fence.